**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**FORT WAYNE DIVISION**

| | |
|---|---|
| KEVIN D. MILLER, ) | |
| ) | |
|     Plaintiff, ) | |
| ) | |
| v. ) | CAUSE NO.: 1:05-CV-211-TS |
| ) | |
| JAVITCH, BLOCK & RATHBONE, LLP, ) | |
| and MELVILLE ACQUISITIONS ) | |
| GROUP, LLC, ) | |
| ) | |
|     Defendants. ) | |

**OPINION AND ORDER**

The Plaintiff, Kevin D. Miller, sued the Defendants, Javitch, Block & Rathbone, LLP,

(JB&R) and Melville Acquisitions Group, LLC, (MAG) for malicious prosecution, invasion of

privacy, and breaches of various provisions of the Fair Debt Collections Practices Act (FDCPA),

15 U.S.C. § 1692 *et seq*. This matter is before the Court on the Defendants' Motion to Dismiss, or

in the alternative, Motion for Summary Judgment [DE 7], filed on July 19, 2005, the Plaintiff's

Motion to Exclude or Strike Evidence [DE 12], filed on August 16, 2005, and the Plaintiff's Motion

for Partial Summary Judgment [DE 17], filed on August 16, 2005.

**BACKGROUND**

On June 27, 2005, the Plaintiff filed his *pro se* Complaint against the Defendants as "debt

collectors" who wrongfully sought to collect a debt and instituted groundless litigation to that end.

The Plaintiff stated seventeen causes of action under the FDCPA, one claim for malicious

prosecution, and one claim for invasion of privacy or false light publicity. The Plaintiff invoked the

Court's original jurisdiction under 15 U.S.C. § 1692k(d) and 28 U.S.C. § 1331 and the Court's supplemental jurisdiction under 28 U.S.C. § 1367(a).

On July 19, 2005, the Defendant moved for dismissal and moved, in the alternative, for summary judgment. On August 5, 2005, the Plaintiff responded to the motion to dismiss and on August 10, the Defendants replied.

On August 16, 2005, the Plaintiff moved to exclude or strike the Declarations the Defendants filed in support of their motion for dismissal and summary judgment and also responded to the Defendants' motion for summary judgment. On August 23, the Defendants responded to the Plaintiff's motion to strike, to which the Plaintiff did not reply. Also on August 23, the Defendants replied to the Plaintiff's responses to its motion for dismissal and for summary judgment.

On August 16, 2005, the Plaintiff filed a Motion for Partial Summary Judgment with respect to JB& R's liability on the Plaintiff's state law claim for malicious prosecution. On August 23, the Defendants responded and on September 1 the Plaintiff replied.


## SUMMARY JUDGMENT STANDARD[1]

The Federal Rules of Civil Procedure mandate that motions for summary judgment be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). "In other words, the record must reveal that no reasonable jury could find for the nonmoving party." *Dempsey v.*

---

[1] The Defendants moved for dismissal, or in the alternative, for summary judgment. The Plaintiff has responded to both motions and filed a cross motion summary judgment on the malicious prosecution claim. The Court will consider the motions before it using the summary judgment standard.

2

*Atchison, Topeka, & Santa Fe Ry. Co.*, 16 F.3d 832, 836 (7th Cir. 1994) (citations and quotation marks omitted). Rule 56(c) further requires the entry of summary judgment, after adequate time for discovery, against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

A party seeking summary judgment bears the initial responsibility of informing a court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. The moving party may discharge its "initial responsibility" by simply "'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the non-moving party's case." *Id.* at 325. When the non-moving party would have the burden of proof at trial, the moving party is not required to support its motion with affidavits or other similar materials negating the opponent's claim. *Id.* at 323, 325; *Green v. Whiteco Indus., Inc.*, 17 F.3d 199, 201 n.3 (7th Cir. 1994); *Fitzpatrick v. Catholic Bishop of Chicago*, 916 F.2d 1254, 1256 (7th Cir. 1990). However, the moving party may, if it chooses, support its motion for summary judgment with affidavits or other materials and thereby shift to the non-moving party the burden of showing that an issue of material fact exists. *Kaszuk v. Bakery & Confectionery Union & Indus. Int'l Pension Fund*, 791 F.2d 548, 558 (7th Cir. 1986); *Bowers v. DeVito*, 686 F.2d 616, 617 (7th Cir. 1982); *Faulkner v. Baldwin Piano & Organ Co.*, 561 F.2d 677, 683 (7th Cir. 1977).

Once a properly supported motion for summary judgment is made, the non-moving party cannot resist the motion and withstand summary judgment by merely resting on its pleadings. Fed.

3

R. Civ. P. 56(e); *Donovan v. City of Milwaukee*, 17 F.3d 944, 947 (7th Cir. 1994). Federal Rule of Civil Procedure 56(e) establishes that "the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts to establish that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); *see also Anderson v. Liberty Lobby*, 477 U.S. 242, 248–50 (1986). Thus, to demonstrate a genuine issue of fact, the non-moving party must do more than raise some metaphysical doubt as to the material facts. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *Juarez v. Ameritech Mobile Commc'ns, Inc.*, 957 F.2d 317, 322 (7th Cir. 1992). Only material facts will preclude summary judgment; irrelevant or unnecessary facts do not preclude summary judgment even when they are in dispute. *Anderson*, 477 U.S. at 248–49. If there is no genuine issue of material fact, the only question is whether the moving party is entitled to judgment as a matter of law. *Miranda v. Wisc. Power & Light Co.*, 91 F.3d 1011, 1014 (7th Cir. 1996).

In viewing the facts presented on a motion for summary judgment, a court must construe all facts in a light most favorable to the non-moving party and draw all legitimate inferences and resolve all doubts in favor of that party. *NLFC, Inc. v. Devcom Mid-Am., Inc.*, 45 F.3d 231, 234 (7th Cir. 1995); *Doe v. R.R. Donnelley & Sons Co.*, 42 F.3d 439, 443 (7th Cir. 1994); *Beraha v. Baxter Health Care Corp.*, 956 F.2d 1436, 1440 (7th Cir. 1992). A court's role is not to evaluate the weight of the evidence, to judge the credibility of witnesses, or to determine the truth of the matter, but instead to determine whether there is a genuine issue of triable fact. *Anderson*, 477 U.S. at 249–50; *Doe*, 42 F.3d at 443.

# MOTION TO STRIKE

In support of their Motion for Summary Judgment, the Defendants provide the Declarations of Christopher Cassidy and Thomas Milana, Jr. The Plaintiff moves to strike portions of the Cassidy and Milana Declarations as speculative, lacking trustworthiness, or containing inadmissible hearsay.

Rule 56(e) requires that affidavits supporting or opposing summary judgment

shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. . . .  [T]he adverse party's response [to the motion], by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.

A court may only consider those parts of an affidavit that satisfy the requirements of Rule 56(e). *Adusumilli v. City of Chicago*, 164 F.3d 353, 359 (7th Cir. 1998).

Thus, one requirement is that affidavit testimony must concern matters within the affiant's personal knowledge. *Id.*; *see also* Fed. R. Evid. 602 ("A witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter."). Statements outside the affiant's personal knowledge or statements that are the result of speculation or conjecture or merely conclusory do not meet the requirements of Rule 56(e). *Stagman v. Ryan*, 176 F.3d 986, 995 (7th Cir. 1999).

Another limitation on affidavit testimony is that it may not rely on hearsay that would not be admissible at trial.  *See Eisenstadt v. Centel Corp.*, 113 F.3d 738, 742 (7th Cir. 1997) ("[H]earsay is inadmissible in summary judgment proceedings to the same extent that it is inadmissible in a trial."). Federal Rule of Evidence 802 generally bars the admission of hearsay (a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted). However, Rule 801 defines some statements as non-hearsay, and

Rules 803 and 804 list exceptions to the hearsay rule. The party offering evidence based on hearsay may not rely on that evidence unless it demonstrates that it falls under an exception.  *Boyce v. Moore*, 314 F.3d 884, 889 (7th Cir. 2002).

**A.    Milana Declaration**

The Plaintiff challenges paragraphs four, five, and six of the Declaration of Thomas Milana, Jr., the custodian of MAG's business records. These paragraphs relate to the chain of title of the account that has become the subject of this lawsuit.

He contends that paragraph four should be stricken because it is not based on personal knowledge. Paragraph four provides that "Providian National Bank transferred all its right, title and interest in the account of Kevin D. Miller, account number [redacted] to RB Consulting LLC by a bill of sale." (Milana Decl. ¶ 4.) The Plaintiff argues that Milana does not claim to be an agent, officer, representative, or employee of Providian or RB Consulting, and does not attest to personally participating in the described transfer or otherwise witnessing it. The Plaintiff also argues that if paragraph four was intended as an assertion by Providian and RB Consulting, it is a "statement" made by a non-party and is hearsay.

The Plaintiff also contends that if the documents described in paragraphs five and six are admitted under the business records exception to the hearsay rule, then Rule 803(7) would dictate that lack of a business record to memorialize the event in paragraph four is proof that it never occurred. (Pf.'s Mem. in Support of Mot. to Strike 4.)

Using the same reasoning he applied to paragraph four, the Plaintiff argues that paragraphs five and six are speculative and contain hearsay. Paragraph five indicates that RB Consulting

6

transferred its rights in the Plaintiff's account to TCM Funding Corp. and references an attached bill of sale. Paragraph six provides that TCM Funding Corp. transferred its rights in the account to MAG as represented by an attached bill of sale. The Plaintiff lodges an additional challenge to paragraph six, claiming that the attached bill of sale  is untrustworthy because the bill of sale referenced in paragraph five was signed by the seller and the bill of sale referenced in paragraph six was signed by the purchaser. He argues that both practices cannot be acceptable and that it makes more sense that if only one signature appears on the bill of sale to transfer property, it should be that of the seller, not the buyer.

The Defendants respond that the Plaintiff's attempt to exclude evidence relating to the chain of title of his debt with Providian should be denied. The Defendants assert that records identified in paragraphs five and six of Milana's Declaration are admissible under Federal Rules of Evidence 803(15) and 902(9). The Defendants also contend that the presence or absence of a defect in the chain of title is not material to any of the Plaintiff's claims. They contend that paragraphs four, five, and six of Milana's Declaration and the attachments reflect records that are admissible under Rules 803(6) and 902(11).

The Court finds that because the Defendants were not obligated to prove the chain of title in defense of the Plaintiff's FDCPA claims, the motion to strike as it relates to paragraphs four, five, and six of Milana's Declaration is denied as moot.

**B.      Cassidy Declaration**

The Plaintiff contends that the Declaration of Christopher Cassidy, an attorney with JB&R, contains inadmissible hearsay. Specifically, he argues that an electronic file submitted to JB&R by

Track America Financial Group, and a subsequently created JB&R electronic database file, which are attached to Cassidy's Declaration as Exhibits 1 and 2, are inadmissible because they contain the statements of Track America Financial Group. The file Track America submitted to JB&R contained information about the Plaintiff and the balance he owed on an account originally held by Providian Bank. It was JB&R's collection effort on this account that led to the Plaintiff's current lawsuit.

The Defendants assert the same arguments for the admission of Cassidy's Declaration and documents attached thereto as they set forth in response to the Plaintiff's challenge to Milana's Declaration.

Cassidy declared that Exhibits 1 and 2 were true, authentic, and accurate copies of JB&R's records kept in the ordinary course of its business affairs. Cassidy also stated that he was familiar with the record keeping system. The Plaintiff's hearsay challenge to Cassidy's Declaration fails under Federal Rule of Evidence 803(6) which provides an exception to the hearsay rule for reports or records of regularly conducted business. The Plaintiff's Motion to Strike Cassidy's statements is denied and the Court can consider the Track America Report when ruling on the pending motions.

## STATEMENT OF FACTS

Defendant JB&R is a law firm. Defendant MAG was JB&R's client in the collection of a debt that the Plaintiff purportedly owed MAG.

On November 23, 2004, Track America, the entity managing MAG's purchased debt portfolio, transmitted an electronic file to JB&R. The report indicated that the Plaintiff owed money on an account originally held by Providian Bank. The account was opened May 17, 1999, the last payment date was January 2002, and the charge off date was August 15, 2002. The original balance

and charge off amount was $4,451.58, with an interest rate of 8%.

On November 24, 2004, JB&R requested the Plaintiff's credit bureau report from Transunion. On November 26, JB&R sent the Plaintiff a letter advising him that it had been retained by MAG to collect an outstanding balance of $5,368.77 on a Providian Bank account. (Pf.'s Comp., Ex. 1.) The $5,368.77 amount was premised on the original balance of $4541.58 plus 8% interest from August 15, 2002, the charge off date provided in Track America's report. The letter contained the following paragraph:

> Unless you, within thirty days after receipt of this notice, dispute the validity of this debt, or any portion thereof, the debt will be assumed to be valid by us. If you notify us in writing within the thirty-day period that the debt, or any portion thereof, is disputed, we will obtain verification of the debt and a copy of such verification will be mailed to you by us. Upon your written request within the thirty-day period, we will provide you with the name and address of the original creditor, if different from the current creditor. We as a debt collector are attempting to collect a debt and any information obtained will be used for that purpose.

(Pf.'s Comp., Ex 1.)

On November 29, 2004, the Plaintiff's credit report confirmed that the Providian account opened in May 1999 and closed in August 2002 with a charge off balance of $4,541. The report indicated that as of August 2002, the balance was zero dollars and that the debt had been purchased by another lender. The report provided Washington, D.C., as the Plaintiff's previous address.

The Plaintiff did not respond to the letter from JB&R. On February 4, 2005, MAG filed a lawsuit in the Allen County Superior Court for the collection of the debt, citing an amount of $5,385.69, which represented the principal debt plus 8% interest from August 2002 through December 10, 2004. (Pf.'s Comp., Ex. 2.) JB&R represented MAG in the lawsuit. Attached to the Complaint was an Affidavit signed by an agent of MAG who attested that she was familiar with the account that the Plaintiff owed MAG, which had a balance of $5,385.69 with interest in the rate of

9

8% per annum from December 10, 2004, until paid in full.

On March 4, 2005, the Plaintiff answered the state court complaint, denying that he owed any money and asserting, in the alternative, that the statute of limitations barred collection of the debt and requesting that the case be dismissed with prejudice. (Pf.'s Comp., Ex. 5.) MAG requested additional time to respond to the motion to dismiss and JB&R requested that MAG obtain the original documents concerning the debt. On May 24, JB&R moved, on behalf of MAG, to dismiss its case without prejudice because MAG had not yet received the original documents from Providian. The court granted dismissal without prejudice on June 7, 2005. (Pf.'s Comp., Ex. 9.)

The Plaintiff did not live in Indiana during the time that the Providian account was active, 1999–2002. He lived in Maryland and worked in Maryland, Virginia, and Washington, D.C., and received mail at post office boxes in Washington, D.C. and Baltimore, Maryland.

The Plaintiff requested his credit report from a different agency than the one who supplied JB&R with a report. This report also showed a Providian account opened in May 1999 with a "High Credit" amount of $4,541. The last date of activity was January 2002. The account had been charged off and transferred or sold and the balance of the Providian account was $0.

## DISCUSSION

### A.     Fair Debt Collection Practices Act

The FDCPA was enacted in response to inadequate laws to redress injuries to consumers from abusive, deceptive, and unfair debt collection practices by debt collectors. 15 U.S.C. § 1692. The FDCPA broadly prohibits: (1) unfair or unconscionable collection methods, (2) conduct which harasses, oppresses, or abuses any debtor, and (3) any false, deceptive, or misleading statements in

connection with collection of a debt. 15 U.S.C. §§ 1692d–f. The FDCPA creates a private right of action against a debt collector. 15 U.S.C. § 1692k. The Seventh Circuit evaluates alleged violations of the FDCPA by viewing a debt collector's conduct through the eyes of the "unsophisticated consumer." *Avila v. Rubin*, 84 F.3d 222, 226 (7th Cir. 1996). "The unsophisticated consumer standard protects the consumer who is uninformed, naive, or trusting, yet it admits an objective element of reasonableness. The reasonableness element in turn shields complying debt collectors from liability for unrealistic or peculiar interpretations of collection letters." *Id.*

Section 1692g(a) of the FDCPA requires that all letters seeking to collect a debt contain a validation notice. This notice should inform a debtor that she has thirty days to dispute the validity of the debt, either in part or in whole. If the debt is undisputed, the collector may assume the debt is valid and proceed to collect it. *Avila v. Rubin*, 84 F.3d 222, 226 (7th Cir.1996). The Plaintiff does not contend that the letter failed to meets the requirements of § 1692g or that he disputed the debt within thirty days of receiving the letter.

Instead, the Defendant claims that the debt was not judicially enforceable because the applicable statute of limitations had expired. In fact, most of his claims under the FDCPA hinge on his belief that the debt collection action was time-barred and, therefore, the Defendants made a false representation when they implied in the letter that it was judicially enforceable and when they actually filed suit to collect the debt. The Plaintiff also claims that genuine issues of fact exist regarding the amount of debt owed, if any, the applicable interest rate, and whether MAG owned the debt. The Plaintiff claims violations of §§ 1692d, 1692e(2)(A), 1692e(8), 1692e(10), 1692f, and 1692f(1) of the FDCPA.

The issue before this Court is not whether, as a matter of law, the Plaintiff owes MAG on

11

the credit card account he originally had with Providian. That matter is appropriate for a state court collection suit where the Defendants would carry the burden of proof. Rather, the issue is whether the Defendants violated the FDCPA in the manner in which it sought to collect the purported debt, first by sending the Plaintiff a letter and then by filing a civil suit. In other words, did the Defendants use unfair or unconscionable collection methods, engage in conduct meant to harass, oppress, or abuse the Plaintiff, or make false, deceptive, or misleading statements in the dunning letter or lawsuit? These are issues upon which the Plaintiff would bear the burden of proof at trial. If there is an absence of evidence to support the Plaintiff's FDCPA claims, or if no specific facts establish genuine issues for trial, the Defendants are entitled to summary judgment.

**1.**      ***Plaintiff's FDCPA Claims***

The Court will provide a synopsis of the Plaintiff's specific FDCPA claims before addressing the underlying basis for those claims—that the debt MAG sought to collect from the Plaintiff was not enforceable by MAG for the amount asserted in the dunning letter and the state court lawsuit.

a.      *Counts One and Two—Section 1692d*

The Plaintiff alleges that the Defendants violated § 1692d when they instituted a civil action against him to enforce a debt that they knew, or should have known, was not judicially enforceable and this amounted to harassment, oppression, or abuse. (Pf.'s Comp., ¶ 22–30.)

Section 1692d prohibits a debt collector from  engaging "in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt." 15 U.S.C. § 1692d.

12

Without limiting the general application of the foregoing, the following conduct is a violation of this section:

(1) The use or threat of use of violence or other criminal means to harm the physical person, reputation, or property of any person.

(2) The use of obscene or profane language or language the natural consequence of which is to abuse the hearer or reader.

(3) The publication of a list of consumers who allegedly refuse to pay debts, except to a consumer reporting agency or to persons meeting the requirements of section 1681a(f) or 1681b(3) of this title.

(4) The advertisement for sale of any debt to coerce payment of the debt.

(5) Causing a telephone to ring or engaging any person in telephone conversation repeatedly or continuously with intent to annoy, abuse, or harass any person at the called number.

(6) Except as provided in section 1692b of this title, the placement of telephone calls without meaningful disclosure of the caller's identity

*Id.*

The Defendants argue that neither filing a lawsuit, or threatening civil suit if a debtor does not pay, amounts to harassing, oppressive, or abusive conduct where the threat involved could lawfully be taken and was carried out. The Plaintiff responds that there is a question of fact concerning whether filing the lawsuit was lawful action because he has presented evidence that he did not owe the debt at issue and that the statute of limitations had expired on any claim that he owed the debt. The Plaintiff also submits that because he can establish a cause of action for malicious prosecution, the litigation was harassing and oppressive.

b.    *Counts Three, Four, Five, Six, and Seven—Section 1692e(2)(A)*

In Counts Three and Five, the Plaintiff contends that the Defendants falsely represented, in the November 26 dunning letter and in the Allen County Superior Court Complaint, that he owed MAG a debt of $5,368.77. (Pf.'s Comp. ¶¶ 31, 34.) He maintains, in Count Four, that JB&R's representation that it had been "retained" by MAG to enforce the debt was a false representation because it implied that the debt was judicially enforceable. (Pf.'s Comp. ¶¶ 32–33.) The Plaintiff claims, in Count Six, that the Defendants also falsely represented the legal status of the debt as judicially enforceable when they initiated legal action. (Pf.'s Comp. ¶ 35.) For his Seventh Cause of Action, the Plaintiff alleges that because he owed no judicially enforceable debt to MAG, the Defendants's initiation of a lawsuit was "action that it could not legally take." (Pf.'s Comp. ¶¶ 36–37.)

Section 1692e prohibits a debt collector from using false, deceptive, or misleading representations in connection with the collection of any debt. Section 1692e(2)(A) is more specific and refers to the false representation of the character, amount, or legal status of a debt. Under this section, debt collectors are strictly liable for even unintentional false statements. *Randolph v. IMBS, Inc.*, 368 F.3d 726, 730 (7th Cir. 2004).

c.      *Counts Eight and Nine—Section 1692e(8)*

The Plaintiff alleges that the Defendant did not have evidence that a debt was owed or that it was judicially enforceable and their legal action constituted a false communication to the Allen County Superior Court and the Allen County public. (Pf.'s Comp. ¶¶ 38–43.)

Section 1692e(8) prohibits a debt collector from "[c]ommunicating or threatening to communicate to any person credit information which is known or which should be known to be false

. . . ." 15 U.S.C. § 1692e(8).

d.      *Counts Ten, Eleven, Twelve, and Thirteen—Section 1692e(10)*

In Counts Ten through Thirteen, the Plaintiff maintains that the demand letter and the lawsuit constituted a false representation and deceptive means to attempt to collect a debt, because no such debt was owed and it was not judicially enforceable. (Pf.'s Comp. ¶¶ 44-50.)

Section 1692e(10) prohibits a debt collector from using any false representation or deceptive means to collect or attempt to collect a debt.

e.      *Counts Fourteen and Fifteen—Section 1692f*

The Plaintiff alleges that by writing in the dunning letter that JB&R had been retained by MAG to collect a debt, the Defendants were threatening to initiate a lawsuit and that this threat, along with the actual initiation of the lawsuit "constituted an unfair or unconscionable means to collect a debt." (Pf.'s Comp., ¶¶ 52–57.)

Section 1692f prohibits debt collectors from using "unfair or unconscionable means" to collect, or attempt to collect, a debt.

f.      *Counts Sixteen and Seventeen—Section 1692f(1)*

The Plaintiff contends that the Defendants violated a subsection (1) of § 1692f when they sought to collect, through the demand letter and the lawsuit, "an amount not expressly authorized by or created under any agreement." (Pf.'s Comp. ¶¶ 58–61.)

This section prohibits debt collectors from using

15

unfair or unconscionable means to collect or attempt to collect any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section: (1) The collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law.

15 U.S.C. § 1692f(1).


**2.**    ***The Plaintiff's Specific Challenges to the Defendant's Actions***

The Plaintiff's FDCPA claims against the Defendant, as outlined above, hinge on the debt being uncollectible for various reasons. The Plaintiff argues that the Defendants' actions were unlawful because the statute of limitations had expired, the debt was not owed, the applicable interest rate might have been wrong, and MAG did not actually own the debt originally held by Providian.

Because there are no genuine issues of triable fact on any of these purported deficiencies in the underlying debt, the Plaintiff's FDCPA claims fail as a matter of law.


a.    *Statute of Limitations*

The Defendants filed their debt collection action against the Plaintiff in the Allen Superior Court. The action was timely under Indiana statute, which provides a six-year statute of limitations for account claims. *See* Ind. Code § 34-11-2-7. Maryland, where the Plaintiff lived during the life of the Providian account, recognizes a three-year statute of limitations for past-due debts. *See* Md. Code, Courts and Judicial Proceedings, § 5-101 ('A civil action at law shall be filed within three years from the date it accrues unless another provision of the Code provides a different period of time within which an action shall be commenced."). The Plaintiff argues that if the statute of

limitations is dependent on the state in which he resided when the debt was created or became past-due and actionable and not the state in which he resided when the lawsuit was filed, then Maryland's three-year statute of limitations would apply, not Indiana's six-year statute. He also submits that the original financing agreement, which has not yet been received from Providian, may speak to the applicable statute of limitations.

The Plaintiff does not contend that the Defendants filed their claim in the wrong jurisdiction when they filed a complaint in Allen Superior Court. He claims only that another jurisdiction's statute of limitations may apply to the Indiana action on the basis of his residency during the period of time that Providian maintained his account or on the basis of the original agreement. The problem with the Plaintiff's argument is that, under Indiana law, statutes of limitation are procedural, rather than substantive, and are not subject to parties' choice of law disputes. *JKL Components Corp. v. Insul-Reps, Inc.*, 596 N.E.2d 945, 950 (Ind. Ct. App.1992); *cf Autocephalous Greek-Orthodox Church of Cyprus v. Goldberg & Feldman Fine Arts Inc.*, 717 F. Supp. 1374, 1385 (S.D. Ind.1989) ("Because in Indiana statutes of limitations are procedural in nature, Indiana choice-of-law rules state that the statute of limitations of the forum state, Indiana, will apply.") (citing *Albrecht v. Ind. Harbor Belt R.R. Co.*, 178 F.2d 577 (7th Cir. 1949)); *Dart Indus., Inc. v. Adell Plastics, Inc.*, 517 F. Supp. 9 (S.D. Ind. 1980); *Horvath v. Davidson*, 264 N.E.2d 328 (1970)). This is true even if the original financing agreement between the Plaintiff and Providian provides that it is to be governed by the law of another state. *JKL Components Corp.*, 596 N.E.2d at 950. Such a contract provision "operates only to import the substantive law of that state; the procedural law of the forum state applies to procedural issues." *Id.* (holding that even though parties agreed that their contract would be construed under and governed by California law, Indiana law governed the procedures to be

17

followed by the trial court).

The Plaintiff's challenges to applying Indiana's six-year statute of limitations are without merit and are insufficient to create a genuine issue of fact as to whether the Defendants misrepresented that the debt was judicially enforceable.


2.      *Amount Owed on Debt*

The Plaintiff contends that the amount owed is in dispute and thus, there is a triable issue as to whether the Defendants made false representations under the FDCPA. To support this claim he points to his credit report, which indicates a $0 balance on the Providian account. The Defendant counters that the report indicates a $0 balance on the Providian account because Providian sold the debt to another lender, which is also indicated in the report.

Although the credit reports show a $0 balance on the Providian account, they also indicate an original balance of $4541 along with the notation that the debt was purchased by another lender. In addition, the Track Report submitted to JB&R for collection of the debt purchased by MAG shows an original balance of $4541.58 and states that the original creditor was Providian Bank. The Court finds that, contrary to the Plaintiff's assertion, he has not presented evidence that the amount owed to MAG was $0. Whether the Defendants correctly stated, in the dunning letter and state court suit, the amount of debt the Defendant owed MAG is not a genuine issue in dispute. The Plaintiff's FDCPA claims fail to the extent they depend on the Defendants having misrepresented that the Plaintiff was indebted on the account in issue.


3.      *Applicable Interest Rate*

18

The Plaintiff argues that because the Defendants do not have a copy of the original agreement, they cannot determine which state's laws would govern the interest rate on the debt. He contends that because the interest rate has not yet been determined, a genuine issue exists concerning the rate. The Plaintiff thus concludes that the Defendants are not entitled to summary judgment on his FDCPA claims.

Indiana Code § 24-4.6-1-103 provides for an interest rate of 8% "from the date an itemized bill shall have been rendered and payment demanded on an account stated, account closed or for money had and received for the use of another and retained without his consent." As the Plaintiff argues, the agreement could have provided that another state's substantive laws would govern the agreement. However, the Plaintiff's speculation cannot defeat summary judgment. He does not present any evidence that the applicable interest rate was not 8%. The Defendants, by contrast, rely on the Track Report and the Affidavit filed in state court, which both presented an interest rate of 8%. The Plaintiff cannot base his FDCPA claims that the Defendant's made false representations regarding the amount he owed to MAG on his speculation that a different interest rate may apply.

4.    *MAG's Ownership of the Debt*

The Plaintiff contends that there is a genuine issue of fact concerning whether MAG owned the debt at issue. The Defendants submit that the bill of sale attached to Milana's Declaration as Exhibit B evidences MAG's right to sue on the debt.

The Court finds that the Plaintiff's evidence does not create a genuine issue of material fact regarding MAG's ownership of the debt. The Plaintiff challenges the admissibility of the Defendants' evidence that MAG owned the debt, but he presents no evidence of his own to show

that MAG did not have the right to enforce the debt and that, therefore, the Defendants made false and misleading statements under the FDCPA. In other words, there is an absence of evidence to support the Plaintiff's claim that MAG falsely represented that it owned the debt. The moving party may discharge its "initial responsibility" on summary judgment by simply "'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the non-moving party's case." *Celotex*, 477 U.S. at 325.

Because no reasonable jury could find for the Plaintiff on his FDCPA claims, the Defendants' motion for summary judgment on those claims is granted.

### B. Count Eighteen—Malicious Prosecution

The essence of malicious prosecution rests on the notion that the plaintiff has been improperly subjected to the legal process. *Crosson v. Berry*, 829 N.E.2d 184, 189 (Ind. Ct. App. 2005) (citing *City of New Haven v. Reichhart*, 748 N.E.2d 374, 378 (Ind. 2001)). The elements of a malicious prosecution action are: (1) the defendant instituted or caused to be instituted an action against the plaintiff; (2) the defendant acted maliciously in so doing; (3) the defendant had no probable cause to institute the action; and (4) the original action was terminated in the plaintiff's favor. *Id.* Because the Defendants had probable cause to institute the state court action, the Plaintiff's malicious prosecution claim fails on the third prong and the Court need not address the other elements.

Probable cause exists "when a reasonably intelligent and prudent person would be induced to act as did the person who is charged with the burden of having probable cause." *Reichhart*, 748 N.E.2d at 379 (citing *Maynard v. 84 Lumber Co.*, 657 N.E.2d 406, 409 (Ind. Ct. App.1995)). "The

20

crux of attorney liability for malicious prosecution is premised upon a finding that the attorney acted for some purpose other than aiding his client in securing a proper adjudication of his claim." *Ziobron v. Crawford*, 667 N.E.2d 202, 208 (Ind. Ct. App. 1996) (citing *Wong v. Tabor*, 422 N.E.2d 1279, 1287 (Ind. Ct. App.1981)). The issue turns on an objective analysis of whether a competent and reasonable attorney would consider the claim worthy of litigation. *Id.* (citing *Wong*, 422 N.E.2d at 1288).

The Plaintiff contends that the lawsuit against him was improper for the same reasons that he claims the Defendants violated the FDCPA—he did not owe the debt and the statute of limitations for collection of the debt had expired. The Plaintiff submits that the Defendants acted without probable cause when they filed suit against him without having a copy of the agreement under which the debt was created, which would have "presumably spoken to the applicable statute of limitations." He also points to his credit report that showed a zero dollar balance on the Providian debt and showed his previous address in Washington D.C.[2]

At the time it instituted the suit on February 4, 2005, the Defendant had a report from Track America, the entity managing MAG's purchased debt portfolio, indicating that the Plaintiff owed money on an account originally held by Providian Bank. According to the report, the account was opened May 17, 1999, and the charge off date was August 15, 2002. The original balance and charge off amount was $4,451.58, with an interest rate of 8%. The Defendants had also sent the Plaintiff a letter regarding the debt and not received any response, despite informing the Plaintiff that if he did not dispute the validity of the debt, it would be presumed valid. Before filing suit, the Defendant

---

[2] The Plaintiff argues that "[i]f the statute of limitations was not dictated by the terms of the agreement, and instead depended on Miller's state of residency during the life of the debt, the statute of limitations would have run on January 16, 2005," twenty days before the Defendants filed their suit in Allen County. (Pf.'s Mem., DE 18, at 8.)

also received the Plaintiff's credit report, which revealed that the account purchased by MAG was originally a Providian account opened in May 1999, and closed in August 2002 with a charge off balance of $4,541.

The Defendants had no reason to believe that the suit was time-barred based merely on the Plaintiff's previous address in another jurisdiction. The Plaintiff lived in Indiana when they filed the suit and the report from Track America indicated a "Sol Date" of January 16, 2008, which was six years after the date of last payment on the account. Moreover, as discussed *supra*, Indiana's statute of limitations applied to the Defendant's state court action regardless of any agreement and had not expired.

The Plaintiff fares no better on his claim that the Defendants' lacked probable cause because his credit report showed a $0 balance on the Providian account. The credit report verified Track America's report that the account was opened in May 1999, had an original balance of $4541, and was purchased by another lender, thus accounting for the $0 balance on Providian's account.

No genuine issue of fact exists regarding whether the Defendants had probable cause to institute the collection action in state court and the Court need not discuss the other elements of a claim for malicious prosecution. The Defendants are entitled to summary judgment on the Plaintiff's malicious prosecution claim.

## C.      Count Nineteen—Invasion of Privacy (False Light Publicity)

The Plaintiff's final cause of action is for invasion of privacy. He contends that the lawsuit contained false allegations that the Plaintiff owed a judicially enforceable delinquent debt to MAG. The general tort known as invasion of privacy has four strands: (1) unreasonable intrusion upon the

seclusion of another; (2) publicity that unreasonably places another in a false light before the public; (3) unreasonable publicity given to another's private life; and (4) appropriation of another's name or likeness. *Doe v. Methodist Hosp.*, 690 N.E.2d 681, 684 (Ind. 1997). The Plaintiff claims false light publicity.

> One who gives publicity to a matter concerning another that places the other before the public in a false light is subject to liability to the other for invasion of his privacy, if (a) the false light in which the other was placed would be highly offensive to a reasonable person, and (b) the actor had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed.

*Lovings v. Thomas*, 805 N.E.2d 442, 446 (Ind. Ct. App. 2004).

The Court finds that the Defendants are entitled to judgment as a matter of law on the Plaintiff's false light publicity claim. The Plaintiff has not presented evidence that the Defendants filed the lawsuit with knowledge that it was false or in reckless disregard to whether it was false. The Defendants relied on the following in claiming that the Plaintiff owed MAG $5,368.77: (1) the electronic file MAG transmitted to JB&R evidencing the date, the original balance, the account charge off date, and the interest rate; (2) a copy of the Plaintiff's credit report dated November 29, 2004, which verified that a debt was owed to Providian and was sold to another lender in August 2002; and (3) the affidavit dated December 21, 2004, from MAG attesting to the amount owed. Other than his own speculation, the Plaintiff has not brought any of these documents into dispute or established a genuine issue as to the accuracy of the state court allegations. The Defendants' motion for summary judgment is granted and the Plaintiff's claim for false light publicity will be dismissed.

## CONCLUSION

For the foregoing reasons, the Defendant's Motion for Summary Judgment [DE 7] is GRANTED, the Plaintiff's Motion to Strike [DE 12] is DENIED, and the Plaintiff's Motion for Partial Summary Judgment [DE 17] is DENIED. Judgment will be entered in favor of the Defendants and against the Plaintiff.

SO ORDERED on October 26, 2005.

 s/ Theresa L. Springmann
THERESA L. SPRINGMANN
UNITED STATES DISTRICT COURT